## Mougenot, Appellant, *v.* Vernon.

*Justice of the peace—Judgment—Transfer of judgment—Executions — Certificate of return of " no goods "—Acts of March* 20, 1810, 5 *Sm. L.* 161; *April* 16, 1840, *P. L.* 410; *June* 24, 1885, *P. L.* 160, *and May* 9, 1899, *P. L.* 176.

Where a judgment exceeding $100 is obtained before a justice of the peace in one county, and a transcript is filed in the prothonotary's office of that county, and then transferred to another county by an exemplification, it is not necessary as a prerequisite to execution to file a certificate with the transferred judgment, showing a return of " no goods " by a constable in the county where the justice's transcript was originally filed.

166 MOUGENOT, Appellant, *v.* VERNON.

Statement of Facts—Opinion of Court below. [23 Pa. Superior Ct.

Argued May 12, 1903. Appeal, No. 73, April T., 1902, by plaintiff, from order of C. P. Mercer Co., June T., 1902, No. 10, E. D., making absolute rule to set aside ven. ex. in case of E. Mougenot v. W. F. Vernon. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. D. PORTER, MORRISON and HENDERSON, JJ. Reversed.

Rule to set aside ven. ex.

MILLER, P. J., filed the following opinion:

The plaintiff obtained a judgment against the defendant before a justice of the peace of Venango county, and on October 9, 1901, a transcript of said judgment was entered on the records of the court of common pleas of Venango county. On October 10, 1901, an exemplification of the record of said judgment was transferred from the court of common pleas of Venango county and entered and filed of record in the court of common pleas of Mercer county. On March 15, 1902, a fi. fa. was issued on said judgment out of the court of common pleas of Mercer county and a levy taken upon the land of the defendant and inquisition held thereon. On May 17, 1902, a vend. ex. was issued thereon and a levy taken upon the land of the real estate and property advertised.

The defendant came into court by petition setting forth the foregoing facts and asks to have the writ of vend. ex. set aside:

1. Because before fi. fa. was issued a certificate was not produced to the prothonotary from the justice before whom the original judgment was entered stating that an execution had issued to the proper constable and return of no goods.

2. That the inquisition proceedings were illegal and void. The Act of March 20, 1810, P. L. 2586, 115, provides for the entering of the transcript of a judgment obtained before a justice of the peace by the prothonotary of the court where such judgment was obtained. It was provided in said act that no fi. fa. shall be issued by any prothonotary until a certificate shall be first produced to him from the justice before whom the original judgment was entered, stating that an execution had issued to the proper constable and a return thereon of no goods.

The Act of April 16, 1840, P. L. 2479, 27, provides for the transfer of a judgment entered, or a copy of a transcript of a justice of the peace to another county, and when so entered

the case may then be proceeded in as prescribed by the act of June 16, 1836; and as to liens, revivals, executions, etc., such judgment shall have the same force and effect as if the judgment had been entered or the transcript been originally filed in the same court to which it may thus be transferred.

The Act of June 24, 1885, P. L. 2494, 58, provides for the effect of judgments of magistrates when entered in prothonotary's office, and contains the same proviso as to filing a certificate of the justice of the peace before whom the said judgment was obtained before any execution could issue thereon on such transcript in the court of common pleas, as is provided for in the act of 1810. The reason for the passage of this act is fully explained in Smith v. Wehrly, 157 Pa. 407.

It will thus be seen that by these several acts the filing of the transcript, either in the county in which it was originally obtained before the justice or in the county to which the said judgment was transferred, had all the effect of a judgment in the court of common pleas, except that the plaintiff is restrained from issuing an execution upon it until there has been a return of nulla bona before the justice and a certificate filed with the prothonotary thereof.

The plaintiff concedes that if there were no other acts bearing upon the subject than those of 1810, 1840 and 1885, it would be incumbent on the court to set aside the vend. ex. as prayed for by the defendant. He contends, however, that by virtue of the provisions of the Act of May 9, 1889, P. L. 2590, 123, he was justified in issuing the fi. fa. in the court of common pleas of Mercer county without first having filed a certificate with the prothonotary from the justice of the peace before whom the judgment was originally obtained; that a fi. fa. had been issued by him and a return made thereon of no goods. The act is as follows :

"Where a judgment has been obtained before a justice of the peace of this commonwealth to the amount of one hundred dollars and upwards, it shall and may be lawful for the plaintiff in such judgment, upon filing a transcript thereof in the court of common pleas of the country in which the judgment was obtained, to have execution thereof in said court without first having an execution issued by the justice and a return of nulla bona by a constable."

Unquestionably, under the provisions of this act, the judgment being for more than $100, the plaintiff could have issued execution in Venango county without first having an execution issued by the justice and return of no goods and a certificate thereof filed.    The act limits this privilege to the county in which the judgment was obtained.    Here the judgment was obtained in Venango county.

It has been repeatedly held that the transfer of a judgment from one county to another does not make it a judgment of the court to which it is transferred.    In Nelson v. Guffey, 131 Pa. 273, it was held:

"The transfer of a judgment by an exemplification of the record thereof under section 1, Act of April 16, 1840, P. L. 410, is for the purposes of lien and execution only and does not become a judgment, in the common interpretation of the word, of the county to which it has been transferred.    It is but the record evidence of the existence of the judgment in the county in which it was obtained; the court to which it was transferred has no power over it save for purposes of lien and execution. Upon a judgment entered upon such exemplification, or upon a judgment of revival thereof, no testatum fiere facias can issue."

We cannot therefore give the interpretation to the act of 1889 asked for by the plaintiff.    If the legislature had intended that the plaintiff should have execution in the county to which such judgment was transferred, it certainly would have so said.    By the very words of the act the issuing of such execution is confined to the county in which the judgment was obtained.    In the case at bar the judgment was obtained in Venango county and not in Mercer, and while we have hesitated about making the rule absolute and setting aside the vend. ex., we are unable to do otherwise.

*Error assigned* was the order of the court.

B. *Magoffin*, with him *James D. Emery, James M. Hittle* and *Joseph W. Nelson*, for appellant.—The certificate was not necessary: Carroll v. Bradley, 8 W. N. C. 197; Bowman v. Silvus, 6 Kulp, 496; Nelson v. Guffey, 131 Pa. 273; King v. Nimick, 34 Pa. 297; Baker v. King, 2 Grant's Cases, 254; Knauss's App., 49 Pa. 419.

*W. J. Wheildon* and *W. C. Pettit*, for appellee.—The "proper county" means the county in which the judgment is originally filed: Brooke v. Phillips, 83 Pa. 183.

OPINION BY BEAVER, J., May 22, 1903 :

The plaintiff obtained a judgment against the defendant before a justice of the peace in Venango county for a sum exceeding $100, and entered a transcript thereof in the court of common pleas of said county. He subsequently took an exemplification of the record of the judgment so entered in the common pleas, which was entered in the common pleas of Mercer county. By successive legal steps, he undertook to sell real estate of defendant in the latter county upon a writ of vend. ex., which, upon application to the court, was finally set aside upon the ground that no certificate of a return of no goods by a constable to an execution issued by the justice of the peace had been filed in the common pleas of Venango county, in accordance with the provisions of the acts of assembly of March 20, 1810, 5 Sm. 161, and June 24, 1885, P. L. 160. We say in Venango county, because, although the court below does not say so in express terms, we assume that to have been its meaning, for we know of no statutory authority for entering any transcript or certificate of a justice of the peace of one county in the court of common pleas of any other county.

The court fully considered the effect of the Act of May 9, 1889, P. L. 176, for in its opinion it is said : "Unquestionably under the provisions of this act, the judgment being for more than one hundred dollars, the plaintiff could have issued execution in Venango county, without first having an execution issued by the justice and a return of no goods and a certificate thereof filed." The court, however, goes on to say, "The act limits this privilege to the county in which the judgment was obtained," and herein we apprehend is where the scope and effect of the act is misconceived. There is no limitation in the act as to the effect of the judgment when regularly transferred to another county. The act does not provide for such transfer and hence, to ascertain what its effect in another county may be, we must resort to the Act of April 16, 1840, P. L. 410, which provides the manner in which a judgment in the court

of common pleas of one county may be transferred to the same court of another county, and which provides as to such transferred judgment that "as to lien revivals, executions and so forth, it shall have the same force and effect and no other as if the judgment had been entered or the transcript been originally filed in the same court to which it may thus be transferred."

In order, therefore, to determine the force and effect of the transferred judgment, we must go to the court where it was originally entered. There all the steps taken by the plaintiff to enforce his judgment were confessedly legal and regular and, if so, they are regular and legal here. The limitation in the act of 1889, supra, refers only to the county in which the transcript of the judgment of the justice of the peace is to be entered; but, when entered, whatever its legal effect may be in that county, such will be its legal effect in any county of the commonwealth to which it may be transferred, as provided by law. To hold otherwise would give rise to the greatest uncertainty and would give to a judgment in one county qualifies and effects which it would not have when transferred to another. In other words, it would be equivalent to holding that the act of 1889 in effect repealed the act of 1840, so far as a particular class of judgments is concerned. This will not be done, when no such legislative intent is apparent and the acts are not in themselves repugnant, as we do not think they are The order making absolute the rule to show cause, etc., is reversed, and the record remitted with a procedendo.